IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEANGELO BROWN,

                Plaintiff,                OPINION AND ORDER

v.

                                                  23-cv-280-wmc

WARDEN LIZZIE TEGELS,

                Defendant.

---

      Plaintiff DeAngelo Brown, representing himself, alleges that Jackson Correctional Institution Warden Lizzie Tegels violated his First Amendment freedom-of-association right by refusing to allow his 12-year-old niece to visit him while he was incarcerated there. Defendant Tegels moves for summary judgment on the merits of this claim. Alternatively, she claims entitlement to absolute and qualified immunity. (Dkt. #18.) For the following reasons, the court will grant defendant's motion.

UNDISPUTED FACTS[1]

**A. Background**

      In 2016, Brown pleaded guilty in Milwaukee County Circuit Court to one count of

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings and other evidence when viewed in a light most favorable to plaintiff, including drawing all reasonable inference in his favor. *See Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true."). Because plaintiff failed to respond to defendant's proposed findings of fact as required by the court's summary judgment procedures, the court has generally accepted defendant's proposed findings of fact as undisputed, so long as they are supported by admissible evidence. However, in recognition of the fact that plaintiff is not represented by an attorney, the court has attempted to consider those facts he disputes where some credible evidence arguably supports it or he could reasonably have personal, contrary knowledge of it.

solicitation of prostitutes and one count of child enticement, with counts of sexual intercourse with a child under 16 and physical abuse of a child read into the record. The court then sentenced Brown to three years imprisonment to be followed by five years of supervision. As part of the judgment of conviction, the court also prohibited Brown from contacting the victim, as well as having "no contact with children under the age of 16" during his period of supervision. (Dkt. #21-1 at 7.) He was further ordered to complete a sex offender evaluation.

In 2019, Brown's supervision was revoked based on an Administrative Law Judge's finding that he had violated its terms and conditions by having contact with a minor girl, threatening her and coercing her into prostitution. In 2020, Brown was convicted of one count of human trafficking based on the same facts. After this revocation, Brown was returned to custody, and following his new conviction, transferred to Jackson. Defendant Lizzie Tegels is the Warden at Jackson, where Brown was an inmate from August 7, 2020, until August 24, 2023.[2]

B. Jackson Visitor Approvals

Division of Adult Institutions ("DAI") policy generally states that individuals may visit inmates housed within Wisconsin Department of Corrections ("DOC") facilities. DAI Policy 309.06.01. To add a visitor to his approved list, an inmate must first mail a visitor questionnaire to the proposed visitor to complete and return it to the institution. Every proposed visitor, including children, must submit such a questionnaire, while any proposed

---

[2] Brown transferred to a supervised living facility on August 24, 2023.

2

minor visitor must also have the written consent of a non-incarcerated parent or legal guardian (or a court order allowing the visitation).

The individual institution may then conduct a background check of the proposed visitor and the inmate. This process may include reviewing: (1) the inmate's file for their presentence investigation reports, judgments of conviction, criminal complaints, and revocation summaries; (2) public state court docket information about individuals who have convictions and other court activity in Wisconsin; and (3) the inmate's special handling summary for information on any restrictions on the inmate. In some cases, the inmate's social worker or psychological unit staff may also be asked for input. Relevant here in particular, it is DAI policy to consider whether: (1) an inmate's judgment of conviction limits his contact with a certain individual or class of individuals; (2) a proposed visitor is potentially vulnerable; (3) the inmate has a history of sexually related crimes; and (4) the proposed visitor fits the inmate's victim profile. Ultimately, the approval of a proposed visitor may be based on the recommendations by the warden, the inmate's social worker, the inmate's probation and parole agent, psychological unit staff, and other relevant staff members.

At Jackson, the Institution Unit Supervisor is specifically responsible for visitor approvals. Proposed visitors who are denied may appeal to the Warden, as may the inmate through the inmate complaint review system. Denied visitors must wait at least six months before submitting another visitor questionnaire.

### C. Brown's March 2023 Visitation Request and Denial

Jackson received a visitor questionnaire for Brown's 12-year-old niece, B.N.C., in

3

February 2023, signed by Victoria Brown, B.N.C.'s legal guardian. Although Victoria was not approved as a visitor because she did not list her criminal history, Brown's social worker nevertheless recommended that B.N.C be approved because she is a family member who "does not fit [Brown's] victim profile," at least in the social worker's opinion. (Dkt. #21-7 at 1.)

In contrast, Brown's probation and parole agent recommended denial based on unmet his sexual offender treatment needs, history of verbal manipulation of minors, the need for the presence of a parent or legal guardian (none of whom had been approved), and a recent major conduct report concerning Brown's threats to an intimate partner. Brown's psychological services unit clinician also recommended denial because "[t]here appears to be reasonable grounds to believe that the proposed visitor may be subject to victimization." (*Id.*)

Taking all of these recommendations into account, Brown's unit supervisor at Jackson denied visitation with B.N.C. on March 22, 2023, "due to victimization," writing further that "[a]lthough the proposed visitor is a family member, she fits the victim profile and therefore is denied at this time."[3] (*Id.*) On the visitor review form, the unit supervisor also noted that Brown's parole agent and psychological clinician had recommended denial consistent with Wis. Admin. Code DOC § 309.08(4)(g), which recognizes as grounds for denial that "[t]he warden has reasonable grounds to believe that the proposed visitor may be subjected to victimization." At the same time, there were no institutional restrictions

---

[3] The unit supervisor did not have any recommendation from a sex offender treatment provider to consider because Brown was not in treatment at that time.

4

on Brown corresponding with his niece via the U.S. Postal Service or the KIOSK system, which is similar to email messaging.

B.N.C and Brown both received notices that she was denied visitation under DOC § 309.08(4)(g) due to her risk of victimization. Although the form explained how B.N.C. or Brown could appeal the decision, B.N.C. did not do so, nor did she or Brown resubmit her name for visitation. Instead, Brown filed an inmate complaint purporting to challenge the warden's refusal to allow his niece to visit him. The inmate complaint examiner recommended Brown's complaint be dismissed given that (1) the decision to deny a visitor is discretionary, and (2) the denial of the proposed visitor was in accordance with DOC § 309.08(4)(g). As warden, Tegels was the reviewing authority for Brown's inmate complaint, and she accepted the recommendation to dismiss because psychological services staff, Brown's agent, and the unit supervisor all supported the visitor denial based on Brown's inmate offense history. Also, she found the denial of visitation did not violate the Administrative Code.

Tegels also reviewed Brown's information request regarding the issue and forwarded it to Brown's unit supervisor, because he had been the final decisionmaker, after which the unit supervisor explained to Brown that his niece was denied visitation because she met his victim profile and that the denial had been based on recommendations by his social worker, psychological services clinician, and probation and parole agent. Brown's inmate complaint and information request are the only communications Tegels received from Brown regarding the denial of his niece's visitation. Tegels attests, unchallenged, that she was unaware of any alleged emotional and mental anguish this denial caused Brown.

5

As Warden, it is also undisputed that Tegels is responsible for the safety and well-being of the inmates, staff, and general public with respect to occurrences and conduct within the institution. She is further responsible for maintaining a rehabilitative environment at Jackson that facilitates inmates' penological interests. In particular, Tegels attests to her belief that allowing Brown -- a convicted sex offender whose crimes involved the sexual exploitation of underaged girls -- to visit with his underage niece would hinder his penological and rehabilitative interests. She also notes that Brown's judgments of conviction include prohibitions on contacting underage persons, and require compliance with treatment and education programming offered within the DOC. Finally, Tegels explains that there are only two officers assigned to work in the visiting room, where many visits are usually happening at the same time.

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In deciding whether to grant summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

Generally, a court construes the filings of unrepresented parties like plaintiff generously. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (noting that courts "construe *pro se* filings liberally"). However, summary judgment has been repeatedly referred to as the "put up or shut up" moment for parties seeking to take their claims to trial, *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted), and even a *pro se* plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts"; he must respond to defendants' showing of a lack of material disputes of fact by designating specific facts in affidavits, depositions, answers to interrogatories or admissions that establish there is a genuine triable issue. *Anderson*, 477 U.S. at 256-57, 261. Moreover, because those facts must be admissible at trial, plaintiff may not rely on inadmissible hearsay, speculation, or conclusory allegations to defeat summary judgment. *See Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999). Finally, a factual dispute can preclude summary judgment only if the facts "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

While the court has made every effort to review plaintiff's pleadings, affidavit, and the evidence of record in the light most favorable to him, defendant is plainly entitled to summary judgment on plaintiff's freedom-of-association claim against her. Prisoners have no independent constitutional right to visitation or to particular forms of visitation, and prison officials have considerable discretion in determining the time, place, duration and conditions of visitation. *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). Indeed "[s]ome curtailment of that freedom must be expected in the prison context."

*Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). At the same time, prison officials may violate the constitution "by permanently or arbitrarily denying an inmate visits with family members." *Easterling v. Thurmer*, 880 F.3d 319, 323 (7th Cir. 2018).

Thus, the overarching question in this case is whether the visitation restriction was reasonably related to a legitimate penological purpose. *Overton*, 539 U.S. at 132 (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)). To make that determination, the court considers: (1) whether a rational connection exists between the visitation restriction and a legitimate penological purpose; (2) whether there are alternative means of exercising the right; (3) what effect accommodating the right would have on guards, other prisoners, and prison resources generally; and (4) whether there are ready, easy-to-implement alternatives that would accommodate the prisoner's rights. *Id.*

The first factor "can act as a threshold factor regardless which way it cuts." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010). However, the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132. Once the State articulates a "plausible explanation" for the visitation restriction, the burden shifts to the plaintiff to present evidence undermining the State's explanation. *Singer*, 593 F.3d at 536-37. Here, the first factor weighs decidedly in favor of defendant because the link between the visitation denial and a legitimate governmental interest is obvious. Indeed, Tegels was well within her discretion to deny visitation given the "substantial interest in protecting the public, particularly minors and [an inmate's] victims, from [the inmate's] re-victimization or manipulation." *Boyd v. Heil*, No. 17-cv-209-wmc, 2020 WL 6262125, at *11 (W.D. Oct. 23, 2020). She also has an interest in

maintaining an institutional environment that promotes plaintiff's rehabilitative needs. While plaintiff represents that he would not have victimized his own niece, that self-serving statement is insufficient to create a genuine issue of material fact over whether Tegels' denial was reasonable in light of plaintiff's disturbing history of sexual abuse of girls, unmet sex offender treatment needs and recommendations by staff and plaintiff's agent not to allow plaintiff to visit with an underage girl, even if a family member. With this overwhelming evidence, no reasonable jury could find that defendant Tegels lacked more than a sufficient basis to be concerned about the risk that the child could be victimized *and* that plaintiff's rehabilitation could be undermined.[4]

The remaining *Turner* factors merit little discussion on this record. *See Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) ("Where…there is only minimal evidence suggesting that a prison's regulation is irrational, running through each factor at length is unnecessary."). As for the second factor concerning alternative means of exercising the right, it is undisputed that there was no institutional restriction on plaintiff's ability to message or write his niece. Plaintiff does not contend that he was prevented from doing so, nor does he explain why "messaging and mail" are not "acceptable alternatives" here, particularly given the inherent risks in a face-to-face meeting both for the child and plaintiff's treatment needs.[5] *Vega v. Tegels*, No. 17-cv-66-bbc, 2018 WL 3448242, at *6

---

[4] While plaintiff also contends that his criminal conduct cannot be brought to bear in this civil matter, he cites no legal authority for that proposition, which also flies in the face of common sense.

[5] The parties do not address whether the provision of plaintiff's eight-year 2014 combined sentence prohibiting contact with children under the age of 16 would have prevented plaintiff from calling or writing to his niece from Jackson. Because plaintiff does not claim that these alternatives were unavailable, the court presumes they were.

(W.D. Wis. July 17, 2018) (citing *Overton*, 539 U.S. at 135). The third and fourth factors also weigh in defendant's favor -- whether an easy-to-implement alternative exists that would accommodate the right without overtaxing prison resources. First, plaintiff does not propose any alternative. Second, as noted above, B.N.C.'s legal guardian was denied visitation as well, so it is unclear who would have accompanied B.N.C. to any approved visit with plaintiff, and leaving the task of supervision to the two, already busy two officers assigned to work the visiting room was impractical, or at least Warden Tegels had a reasonable basis to so conclude.

Because plaintiff has not established any dispute of material fact as to defendant's reasonable exercise of discretion in denying B.N.C. visitation, nor legal ground to challenge her exercise of that discretion, defendant is entitled to summary judgment on plaintiff's freedom-of-association claim against her and the court need not address her alternative immunity arguments.

## ORDER

IT IS ORDERED that:

1) Defendant Lizzie Tegels' motion for summary judgment (dkt. #18) is GRANTED.

2) The clerk of court is directed to issue judgment in defendant's favor and to close this case.

Entered this 1st day of July, 2024.

BY THE COURT:
/s/

_____
WILLIAM M. CONLEY
District Judge